# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

KAREN MCCOLLAM, on behalf of
herself and all others similarly situated,

            Plaintiff,

vs.

SUNFLOWER BANK, N.A.

            Defendant.

Civil Action No. _____

**<u>JURY TRIAL DEMAND</u>**

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Karen McCollam, on behalf of herself and all others similarly situated brings this class action complaint against Sunflower Bank, N.A. ("Sunflower" or the "Bank"), and alleges the following:

### <u>INTRODUCTION</u>

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Sunflower, arising from the unfair and unconscionable assessment and collection of "overdraft fees" ("OD Fees") on accounts that were never actually overdrawn.

2.      This practice breaches contractual promises made in Sunflower's adhesion contracts.

3.      In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that Sunflower will <u>only</u> charge OD Fees on transactions where there are insufficient funds to cover them.

4.      Sunflower also breaches its duty of good faith and fair dealing when it charges fee in the above circumstance.

1

5.       Sunflower's customers have been injured by Sunflower's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with Sunflower.

6.       On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

7.       Plaintiff is a citizen and resident of Harper, Kansas.

8.       Defendant Sunflower is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. Sunflower has its headquarters in Denver, Colorado and operates banking branches in Colorado, New Mexico, Washington, Texas, Arizona, Missouri, and Kansas.

## JURISDICTION AND VENUE

9.        This Court has original jurisdiction of this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Colorado; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10.       Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Sunflower is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    SUNFLOWER CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

#### A.    Overview of Claim

11.    Sunflower issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

12.    Pursuant to its Account Documents, Sunflower charges fees for debit card transactions that purportedly result in an overdraft.

13.    Plaintiff brings this cause of action challenging Sunflower's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

14.    Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Sunflower immediately reduces accountholders checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because Sunflower has already sequestered these funds for payment.

15.    However, Sunflower still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

16.    Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Sunflower later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of

transactions are APPSN Transactions.

17.    Sunflower maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Sunflower sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

18.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

19.    That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

20.    Still, despite keeping those held funds off-limits for other transactions, Sunflower improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions

*always* have sufficient available funds to be covered.

21.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed
concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a
> customer's available balance but did not result in an overdraft at the time of
> authorization; settlement of a subsequent unrelated transaction that further lowered
> the customer's available balance and pushed the account into overdraft status; and
> when the original electronic transaction was later presented for settlement, because
> of the intervening transaction and overdraft fee, the electronic transaction also
> posted as an overdraft and an additional overdraft fee was charged. Because such
> fees caused harm to consumers, one or more supervised entities were found to have
> acted unfairly when they charged fees in the manner described above. Consumers
> likely had no reason to anticipate this practice, which was not appropriately
> disclosed. They therefore could not reasonably avoid incurring the overdraft fees
> charged. Consistent with the deception findings summarized above, examiners
> found that the failure to properly disclose the practice of charging overdraft fees in
> these circumstances was deceptive. At one or more institutions, examiners found
> deceptive practices relating to the disclosure of overdraft processing logic for
> electronic transactions. Examiners noted that these disclosures created a
> misimpression that the institutions would not charge an overdraft fee with respect
> to an electronic transaction if the authorization of the transaction did not push the
> customer's available balance into overdraft status. But the institutions assessed
> overdraft fees for electronic transactions in a manner inconsistent with the overall
> net impression created by the disclosures. Examiners therefore concluded that the
> disclosures were misleading or likely to mislead, and because such misimpressions
> could be material to a reasonable consumer's decision-making and actions,
> examiners found the practice to be deceptive. Furthermore, because consumers
> were substantially injured or likely to be so injured by overdraft fees assessed
> contrary to the overall net impression created by the disclosures (in a manner not
> outweighed by countervailing benefits to consumers or competition), and because
> consumers could not reasonably avoid the fees (given the misimpressions created
> by the disclosures), the practice of assessing fees under these circumstances was
> found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

22.     There is no justification for these practices, other than to maximize Sunflower's
OD Fee revenue. APPSN Transactions only exist because intervening checking account
transactions supposedly reduce an account balance. But Sunflower is free to protect its interests
and either reject those intervening transactions or charge OD Fees on those intervening

transactions—and it does the latter to the tune of millions of dollars each year. But Sunflowere was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

23.     Besides being unfair and unjust, these practices breach contract promises made in Sunflower's adhesion contracts—contracts which fail to inform accountholders about, and in fact, misrepresent, the true nature of Sunflower's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

24.     In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that Sunflower will only charge OD Fees on transactions that have insufficient funds to "cover" that debit card transaction.

25.     In short, Sunflower is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.     Mechanics of a Debit Card Transaction**

26.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Sunflower. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to Sunflower, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

27.     At this step, if the transaction is approved, Sunflower immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

28.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed

in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending

Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration,

Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

29.     Sometime thereafter, the funds are actually transferred from the customer's account

to the merchant's account.

30.     Sunflower (like all credit unions and banks) decides whether to "pay" debit card

transactions at authorization.  After that, Sunflower is obligated to pay the transaction no matter

what.  For debit card transactions, that moment of decision can only occur at the point of sale, at

the instant the transaction is authorized or declined.  It is at that point—and only that point—when

Sunflower may choose to either pay the transaction or decline it. When the time comes to actually

settle the transaction, it is too late—the financial institution has no discretion and must pay the

charge. This "must pay" rule applies industry wide and requires that, once a financial institution

authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand,

regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046

(Nov. 17, 2009).

31.     There is no change—no impact whatsoever—to the available funds in an account

when this step occurs.

### C.     Sunflower's Account Documents

32.     Plaintiff has a Sunflower checking account, which is governed by Sunflower's

Account Documents.

33.    Amongst the Account Documents which govern Plaintiff's relationship with Sunflower is a document entitled, *Your Deposit Account* (the "Agreement"), which contains a section about overdrafts and NSFs, "Understanding and Avoiding Overdraft and Insufficient (NSF) Fees (hereinafter "OD and NSF Disclosure"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

34.    The OD and NSF Disclosure states in pertinent part:

**UNDERSTANDING AND AVOIDING OVERDRAFT AND INSUFFICIENT (NSF) FEES**.

**Determining your available balance** - We use the "available balance" method to determine whether your account is overdrawn, that is, whether there is enough money in your account to pay for a transaction. Importantly, your "available" balance may not be the same as your account's "actual" balance. This means an overdraft or an NSF transaction could occur regardless of your account's actual balance.

Your account's actual balance (sometimes called the ledger balance) only includes transactions that have settled up to that point in time, that is, transactions (deposits and payments) that have posted to your account. The actual balance does not include outstanding transactions (such as checks that have not yet cleared and electronic transactions that have been authorized but which are still pending). The balance on your periodic statement is the ledger balance for your account as of the statement date.

As the name implies, your available balance is calculated based on the money "available" in your account to make payments. In other words, the available balance takes transactions that have been authorized, but not yet settled, and subtracts them from the actual balance. In addition, when calculating your available balance, any "holds" placed on deposits that have not yet cleared are also subtracted from the actual balance. For more information on how holds placed on funds in your account can impact your available balance, read the subsection titled "A temporary debit authorization hold affects your account balance."

Agreement at 6.

**A temporary debit authorization hold affects your account balance** - On debit card purchases, merchants may request a temporary hold on your account for a specified sum of money when the merchant does not know the exact amount of the purchase at the time the card is authorized. The amount of the temporary hold may be more than the actual amount of your purchase. Some common transactions

where this occurs involve purchases of gasoline, hotel rooms, or meals at restaurants. When this happens, our processing system cannot determine that the amount of the hold exceeds the actual amount of your purchase. This temporary hold, and the amount charged to your account, will eventually be adjusted to the actual amount of your purchase, but it could be three calendar days, or even longer in some cases, before the adjustment is made. Until the adjustment is made, the amount of funds in your account available for other transactions will be reduced by the amount of the temporary hold. If another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, you will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy. You will be charged the fee even if you would have had sufficient funds in your account if the amount of the hold had been equal to the amount of your purchase.

Agreement at 6.

**Payment order of items –**
…

We process electronic payments fifth, in the order they are received on the day they are processed.

Agreement at 7.

**Overdrafts** - You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later.

Agreement at 8.

35. For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to cover those transactions—yet Sunflower assesses OD Fees on them anyway.

36. The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

37. APPSN transactions are always initiated at the time the customer swipes the debit card when there are sufficient available funds in the account.

38.     In fact, Sunflower actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

39.     All the above representations and contractual promises are untrue. In fact, Sunflower charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that Sunflower may impose OD Fees on any APPSN Transactions.

40.     The NSF and OD Disclosure misconstrues Sunflower's true debit card processing and overdraft practices.

41.     First, and most fundamentally, Sunflower charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that Sunflower will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

42.     Sunflower assesses OD Fees on APPSN Transactions that **_do_** have sufficient funds available to cover them throughout their lifecycle.

43.     Sunflower's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Sunflower's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

44.     Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

45.     Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what Sunflower does when it re-debits the account during a secret batching posting

process.

46.     In reality, Sunflower's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

47.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, Sunflower cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

48.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Sunflower does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, Sunflower releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

49.     This secret step allows Sunflower to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which Sunflower specifically set aside money to pay them.

50.     This discrepancy between Sunflower's actual practices and the contract causes accountholders to incur more OD Fees than they should.

51.     In sum, there is a huge gap between Sunflower's practices as described in the OD and NSF Disclosure and Sunflower's practices in reality.

**D.     Sunflower Abuses Contractual Discretion**

52.     Sunflower's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the Account Documents. In addition, Sunflower exploits contractual

discretion to the detriment of accountholders when it uses these policies.

53.     Moreover, Sunflower uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

54.     Sunflower uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### E.     Plaintiff's Debit Card Transactions

55.     As an example, on October 5, 2017, Plaintiff was assessed OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff was assessed OD Fees. This also occurred on another one of Plaintiff's debit card transactions on November 6, 2017.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.  The proposed classes are defined as:

57.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated. The Class is defined as:

> All accountholders who, during the applicable statute of limitations, were charged OD Fees on APPSN Transactions on a Sunflower checking account.

58.     Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their

immediate families.

59.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

60.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Sunflower has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

      a)      Whether Sunflower improperly charged OD Fees on APPSN Transactions;

      b)      Whether the conduct enumerated above violates the contract;

      c)      Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

      d)      Whether the conduct enumerated above is a deceptive trade practice in violation of Colorado and Kansas law;

      e)      The appropriate measure of damages.

61.     The parties are numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Sunflower's records.  Sunflower has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

62.     It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their

common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

63.     Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Sunflower, as described herein.

64.     Plaintiff is a more than adequate representative of the Class in that Plaintiff is a Sunflower checking accountholder and has suffered damages as a result of Sunflower's contract violations. In addition:

> a)     Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;
>
> b)     There is no conflict of interest between Plaintiff and the unnamed members of the Class;
>
> c)     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and
>
> d)     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

65.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

66.     Sunflower has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

67.     All conditions precedent to bringing this action have been satisfied and/or waived.

**BREACH OF CONTRACT INCLUDING THE**

## COVENANT OF GOOD FAITH AND FAIR DEALING
### (Individually and on Behalf of the Class)

68.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

69.    Plaintiff, and all members of the proposed Class contracted with Sunflower for checking account services, including debit card services.

70.    Sunflower breached promises made to Plaintiff and all members of the proposed class when as described herein, Sunflower charged OD Fees as a result of transactions that did not overdraw a checking account, on APPSN Transactions.

71.    In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73.    The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a

particular term, omits terms, or provides ambiguous terms.

74.     Sunflower has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein.  Specifically, Sunflower should not have used its discretion to charge OD Fees on APPSN Transactions. The Account Documents do not have a contract term permitting OD Fees on such transactions, nor multiple NSF Fees on the same transaction, and the documents are otherwise ambiguous as to any right for Sunflower to charge OD Fees on APPSN Transactions.

75.     Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

76.     Plaintiff and all members of the proposed Class have sustained damages as a result of Sunflower's breaches of the contract.

## VIOLATION OF THE COLORADO
## CONSUMER PROTECTION ACT

77.     Plaintiff incorporates by reference the preceding paragraphs.

78.     Plaintiff and other members of the Classes are consumers within the meaning of the Colorado Consumer Protection Act ("CCPA").  Defendant is a seller within the meaning of the CCPA.

79.     Sunflower's conduct, as described herein, constitutes an unfair and deceptive trade practice, as defined in Colo. Rev. Stat. § 6-1-105. Specifically, as described herein, Sunflower knowingly and intentionally utilizes an unfair and deceptive policy of charging overdraft fees on APPSN Transactions and charging multiple NSF Fees on the same item. Sunflower misrepresents and omits its overdraft and NSF Fee practices to consumers in, *inter alia*, its account documents, and wholly fails to disclose to consumers that it will charge overdraft fees on APPSN Transactions and multiple NSF Fees on the same item.

80.    Sunflower's unfair and deceptive conduct occurred, and continues to occur, in the course of Sunflower's business.

104.    Plaintiff seeks judicial orders of an equitable nature against Sunflower including, but not limited to, orders declaring such practices as are complained of herein to be unlawful, unfair, fraudulent and/or deceptive and enjoining them from undertaking any further unfair, unlawful, fraudulent and/or deceptive acts or omissions.

105.    Sunflower's practices have injured Plaintiff. Plaintiff therefore seeks damages, statutory damages, and attorneys' fees to the full extent allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.    Certification for this matter to proceed as a class action on behalf of the Class;

B.    Declaring Sunflower's OD Fee policies and practices to be in breach of its contract with accountholders;

C.    Restitution of all OD Fees and improperly assessed paid to Sunflower by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D.    Actual damages in an amount according to proof;

E.    Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F.    For costs and attorneys' fees under the common fund doctrine and CCPA, and all other applicable law; and

G.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this

Class Action Complaint that are so triable.

Dated:  June 2, 2021                              Respectfully submitted,


                                        By:*/s/ Jeffrey D. Kaliel*
                                              Jeffrey D. Kaliel
                                              Sophia G. Gold
                                              KALIEL GOLD PLLC
                                              1100 15th Street NW, 4th Floor
                                              Washington, D.C.  20005
                                              (202) 350-4783
                                              *jkaliel@kalielpllc.com*
                                              *sgold@kalielgold.com*

                                              Taras Kick (CA Bar No. 143379)
                                              (to be admitted *pro hac vice*)
                                              THE KICK LAW FIRM, APC
                                              815 Moraga Drive
                                              Los Angeles, CA 90049
                                              Telephone: (310) 395-2988

                                              *Attorneys for Plaintiff and the Putative Class*